[Nos. 35076, 35073.  *En Banc.*  May 26, 1960.]

THE STATE OF WASHINGTON, *Appellant,* v. EMORY L. PERSON, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. RICHARD L. KELLBERG, *Respondent.*[1]

*John J. Lally* and *Howard A. Anderson,* for appellant.

[1] Reported in 352 P. (2d) 189.

DONWORTH, J.—The state has appealed from orders of the trial court dismissing complaints charging respondents with the violation of RCW 77.16.050 (hunting with an artificial light).

The material facts which the jury could have found from the evidence are as follows:

On September 10, 1958, at approximately eleven o'clock p.m., Lowell Parsons and Richard Zimmerman, Washington state game protectors, were parked in their patrol car about fifty yards east of the west Eloika Lake road, a Spokane county road. While observing an alfalfa field which was known to be frequented by deer at night, they noticed a light-colored pickup truck traveling along the road in a southerly direction. They had previously seen the same pickup proceeding in the opposite direction about a half hour earlier. When the truck arrived at a point adjacent to the alfalfa field it appeared to slow down considerably, and the officers noticed a beam of light from the passenger side of the truck shine out upon the field. The officers began to follow the truck, which proceeded south along the road for approximately a mile and a half, where it stopped, and the officers observed someone walking around the truck shining a light first on the passenger side of the road and then on the driver's side of the road.

As another southbound car approached from behind the patrol car, the truck commenced to move again in a southerly direction. After the truck proceeded about two hundred yards, the officers signaled it to stop by means of the red light and siren on the patrol car.

Found on the seat of the truck was a three-cell flashlight, and on the floor boards were two twenty-two caliber rifles, one of which was loaded, and a hatchet. Respondent Kellberg had the magazine to the unloaded rifle in his shirt pocket and it contained two shells. A hunting knife was found in the glove compartment. Respondents were then placed under arrest.

On September 11, 1958, separate complaints were filed in justice court charging respondents with the crime of violating RCW 77.16.050. Respondents filed a motion to

suppress the evidence, which was denied. The cases were consolidated for trial, and on November 19, 1958, the justice court found each of the respondents guilty as charged.

Respondents appealed to the superior court. Once again they moved to have the evidence against them suppressed. On January 14, 1959, the motion was argued and denied by the trial court, and on the same day the cases proceeded to trial before the court sitting with a jury.

At the close of all the evidence, the case was submitted to the jury upon instructions from the trial court. After deliberating for approximately four and one half hours, but before reaching a verdict, the jury was recalled into court by the trial judge, who announced that he was dismissing the complaints because of his having concluded that RCW 77.16.050 was unconstitutional.

From the orders of dismissal, the state has appealed. Respondents have not filed a brief nor made any appearance in this court.

■ The pertinent portion of RCW 77.16.050 reads as follows:

"It shall be unlawful for any person to hunt any elk, moose, antelope, mountain goat, mountain sheep, caribou or deer with a jack light or other artificial light of any kind and *to be found with any torch, lantern, electric, acetylene, gas or other artificial light and with any rifle, shotgun, or other firearm, after sunset, in any wooded section or other place where any of the above mentioned animals may reasonably be expected, shall be prima facie evidence of unlawful hunting.* . . . " (Italics ours.)

The trial court's oral opinion was made a part of its orders of dismissal. The opinion discloses that the trial court was of the view that the statute was unconstitutional for two reasons, to wit, (1) it shifted the burden of proof from the state to the defendant; and (2) it compelled a defendant to give evidence against himself.

We think that both reasons are untenable in view of *State v. Rouw,* 156 Wash. 198, 286 Pac. 81 (1930). There the defendant was charged with the crime of unlawfully manufacturing intoxicating liquor for the purpose of sale, barter, and exchange thereof. The statute involved pro-

vided that proof that any person (other than a regularly ordained clergyman) had in his possession intoxicating liquor in excess of a specified minimum amount was *prima facie* evidence that such liquor was being held for purposes of unlawful sale or disposition. In dealing with the question of whether or not the statutory presumption shifted the burden of proof from the state to the defendant, this court stated:

" . . . The statutory presumption which follows from proof of the possession of intoxicating liquor, when considered together with such evidence, establishes on behalf of the state a prima facie case that the accused is guilty of an offense of which the intent to sell or unlawfully dispose of the liquor is an element. In prosecutions of the class referred to, in which the intent to sell or unlawfully dispose of intoxicating liquor is an essential element, at the beginning of a trial, upon a plea of not guilty, a presumption arises that the accused is innocent, which presumption accompanies the accused throughout the trial and remains with him until overcome by evidence which satisfies the jury of the guilt of the accused beyond a reasonable doubt. Assume that the prosecution introduces evidence from which the jury may find beyond a reasonable doubt that the accused had in his possession intoxicating liquor. This having been established, the presumption of law provided for in the statute above quoted arises, and the case then, if the prosecution rests without introducing evidence, direct or circumstantial, from which the jury might lawfully infer an intent to sell or unlawfully dispose of the liquor, must go to the jury, and is impregnable against a motion for a directed verdict on the part of the accused."

See, also, *State v. Fitzpatrick,* 141 Wash. 638, 251 Pac. 875 (1927).

■ Concerning the question of whether or not the statutory presumption requires a defendant to give evidence against himself, the following quotation from the *Rouw* case, *supra,* is directly in point:

"Assuming next that the accused introduces *no evidence whatever,* there still remains a question of fact to be determined by the jury. The presumption following from proof of possession not being conclusive upon the jury, they may still under the law return a verdict in favor of the defendant in so far as the offense charged requires a finding that the

accused had in his possession intoxicating liquor with intent to sell or unlawfully dispose thereof, even assuming that the jury find the accused guilty beyond a reasonable doubt of possession of intoxicating liquor. Under the circumstances assumed, the burden of proof is not shifted to the defendant. The presumption of innocence is still operating and the jury must consider the admitted or proven facts establishing possession, the presumption which under the law follows therefrom and the presumption that the accused is innocent. In finding its verdict the jury are not in law bound to return either a verdict of guilty or a verdict of not guilty, but may exercise their judgment upon the facts proven, taking into consideration both presumptions, and may in the exercise of their functions find the accused guilty or not guilty." (Italics ours.)

Further along in the same opinion it is also stated:

" . . . Statutes to the effect that certain presumptions follow from the establishing of certain facts, such as the statute now under consideration, are constitutional, as has been repeatedly held by this and many other courts. This does not require a holding, as is contended by appellant, that the statutory presumption upon which the instruction now being considered was based requires an accused, if he desires to overcome the same, to introduce evidence sufficient to raise in the minds of the jury a reasonable doubt as to his intent, and that when and not until that is done the statutory presumption is overcome."

Likewise, in *Gillingham v. Phelps,* 11 Wn. (2d) 492, 119 P. (2d) 914 (1941), we said:

" . . . A statutory presumption making a *prima facie* case does not shift the burden of proof or require the adversary to prove the negative by the preponderance of the evidence; it merely requires the submission of the issue to the jury to determine the preponderance of the evidence, required throughout of the party asserting the affirmative of the issue."

Legislation creating statutory presumptions of the type here before us has been almost uniformly upheld by the highest state and Federal courts on numerous occasions. See 51 A. L. R. 1139; 86 A. L. R. 179; 162 A. L. R. 495.

Thus, when the state produced evidence that a defendant had an artificial light and a rifle or other firearm in his pos-

session after sunset in any wooded section or other place where deer or the other animals mentioned in the statute may reasonably be expected, the state has then proven a *prima facie* case of violation of the statute, which requires that the case be submitted to the jury.

█ The trial court expressly refused to instruct the jury concerning the statutory presumption, although the state requested such an instruction. No error has been assigned to the trial court's refusal to so instruct. However, in the event that such an instruction should be requested and given in the future, we think the jury should be further instructed that the presumption is not binding upon the jury even though the fact to be presumed is unrefuted by the defendant, and that the state must still sustain the burden of proving the defendant's guilt beyond a reasonable doubt. In other words, it should be made clear that the statutory presumption permits, but in no way directs, the jury to convict the accused, and must be considered by the jury in the light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces the jury of the accused's guilt beyond a reasonable doubt.

However, once the state has established those facts which give rise to the presumption, the trial court cannot thereafter sustain a challenge to the state's evidence nor set aside a verdict of guilty on the ground of insufficient evidence.

The orders of the trial court dismissing the complaints against respondents are reversed.

ALL CONCUR.