[No. 357-40884-1.    Division One.    June 15, 1970.]
Panel 2

THE STATE OF WASHINGTON, *Respondent*, v. FRANCIS CLAYTON PALMER, *Appellant*.

*McDonell & Alfieri* and *James A. Alfieri,* for appellant.

*Charles O. Carroll, Prosecuting Attorney,* and *Steve Paul Moen,* for respondent.

UTTER, J.—Francis Palmer was convicted, in a trial to the court, of the crime of unlawful possession of burglary tools. He appeals and attacks the constitutionality of this statute on the grounds that it is void for vagueness and, further, that a provision in the statute making possession of the tools under certain circumstances prima facie evidence that possession was with the intent to use the tools in the commission of a crime violates the due process clause of the Fourteenth Amendment.[1]

Palmer's attack on the statute raises the question whether the language involved conveys a sufficient definite warning as to the proscribed conduct, measured by common understanding and practice. Penal statutes must set up ascertainable standards and where a statute either requires or forbids the doing of an act in terms so vague and ambiguous that men of ordinary understanding or common intelligence can only guess at its meaning and differ as to its application, it lacks the first essential of due process. *State v. Hart,* 200 Kan. 153, 434 P.2d 999 (1967).

The conduct forbidden by this statute is the possession of tools or devices suitable for and commonly used in unlawful breaking and entering, with *intent* to use those tools for that unlawful purpose. As noted by the court in *State v. McDonald,* 74 Wn.2d 474, 445 P.2d 345 (1968), "We think even the most stupid member of the house breaking cult would understand that such undesirable conduct falls

---

[1] RCW 9.19.050: "Every person who shall make or mend or cause to be made or mended, or have in his possession in the day or nighttime, any engine, machine, tool, false key, pick lock, bit, nippers or implement adapted, designed or commonly used for the commission of burglary, larceny, or other crime, under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a crime, or knowing that the same is intended to be so used, shall be guilty of a gross misdemeanor. The possession thereof except by a mechanic, artificer or tradesman at and in his established shop or place of business, open to public view, shall be prima facie evidence that such possession was had with intent to use or employ or allow the same to be used or employed in the commission of a crime."

within the prohibition of this statute." We agree and do not believe the statute is void for vagueness.

Palmer next attacks that portion of the statute which provides:

> The possession [of burglary tools] except by a mechanic, artificer or tradesman at and in his established shop or place of business, open to public view, shall be *prima facie evidence* that such possession was had with intent to use or employ or allow the same to be used or employed in the commission of a crime

(Italics ours.) on the ground that the presumption is arbitrary, capricious, and unreasonable and therefore violative of the Fourteenth Amendment.

■ The effect of the term "prima facie evidence" in a criminal case was defined in *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960). Where this term is used, the presumption of innocence that arises at the beginning of a trial with a plea of not guilty, remains with the accused throughout the trial and remains with him until overcome by evidence which satisfies the jury of the guilt of the accused beyond a reasonable doubt. Once the prosecution introduces evidence from which the fact proved may be found beyond a reasonable doubt, the presumption provided for in the statute arises. If the prosecution then rests without introducing evidence, direct or circumstantial relating to the fact presumed, the case still must go to the jury and is not subject to a motion for a directed verdict on the part of the accused.[2]

Even though the accused introduces no evidence whatever, the existence of the fact presumed still remains a question of fact to be determined by the jury and the presumption following from proof of the fact proved is not conclusive upon the jury. They may still return a verdict in favor of the defendant even though they found the fact proved beyond a reasonable doubt.

---

[2]For a possible holding that the court may not be constitutionally able to give even this effect to the presumption *see United States v. Gainey,* 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754, 758 (1965).

The burden of proof to negate the fact presumed does not shift to the defendant. The jury must consider the fact proved, the fact presumed which under the law follows therefrom, and the presumption that the accused is innocent, which continues throughout the trial. In finding its verdict, the jury is not bound to return either a verdict of guilty or a verdict of not guilty, but may exercise its judgment upon the facts proven, taking into consideration both presumptions and may, in the exercise of its function, find the accused guilty or not guilty.

Analytically, the effect of this presumption is consistent with that advocated by James Bradley Thayer. J. Thayer, A Preliminary Treatise on Evidence at The Common Law 337 (1896).

To be consistent with due process, there must be a "rational connection" between the fact allowed to be inferred and the fact proved. *Leary v. United States,* 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969). The court affirmed that the connection between the two must exist in common experience and have a reasonable relation to the circumstances of life as we know them. A rational connection exists if the court can say with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. *Leary* indicates the court, in finding the existence of rational connection, should use contemporary information and not restrict itself to data and findings existing at the time of enactment of the legislative presumption. *Leary* may also stand for the proposition that the prosecution has the burden of establishing a rational connection between the fact proved and the fact presumed when a legislative presumption is attacked on constitutional grounds.

■ The question of whether a rational connection exists between the proof of possession of burglary tools and the presumption of the intent to use or employ them in the commission of a crime has been ruled on favorably by our court in *State v. Fitzpatrick,* 141 Wash. 638, 251 P. 875 (1927). The existence of this rational connection in similar

statutory presumptions dealing with the same subject is confirmed in *State v. Van Voltenberg*, 260 Iowa 200, 147 N.W.2d 869 (1967) and *Burnette v. Commonwealth*, 194 Va. 785, 75 S.E.2d 482 (1953).

In addition to the "rational connection test", the Supreme Court has also examined the constitutionality of legislative presumptions in light of the question of whether the burden placed upon the defendant by the existence of the legislative presumption is outweighed by that lifted from the prosecution. In *Tot v. United States*, 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943), the court asserted that the comparative convenience test was merely a "correlary" to the rational connection test and the latter was controlling, inasmuch as the comparative convenience test could not save a presumption from constitutional infirmity in the absence of a rational connection between the fact proved and the fact presumed. It has been suggested that the comparative convenience test would be better used as a threshold standard to determine whether there is some proper state interest which legitimatizes reliance on presumptive devices.[3]

Whatever the proper role of the "comparative convenience test" is, it is apparent that in the case at hand the person with burglary tools in his possession is in a far more favorable position to produce evidence on and explain what his real intentions were than the state. The statute, as such, is a fair and reasonable allocation of the burden of producing evidence under this additional test.

RCW 9.19.050 does not change the presumption of innocence afforded to the defendant or the state's burden of persuasion beyond a reasonable doubt. The existence of this presumption does not violate constitutional standards.

The judgment of the trial court is affirmed.

JAMES, C. J., and WILLIAMS, J., concur.

---

[3]Ashford & Risinger, *Presumptions, Assumptions and Due Process in Criminal Cases: A Theoretical Overview*, 29 Yale L.J. 165 (1969).