[No. 467-2.    Division Two.    January 2, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. GILES S. ODOM, *Appellant.*

*Joseph Q. Betzendorfer, Jr.* (of *Betzendorfer & Deutscher*) and *Richard I. Gustafson* (of *Sterbick, Manza, Moceri, Gustafson & Narigi*), for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PETRIE, C.J.—The defendant's appeal from a judgment and sentence entered subsequent to jury verdicts of guilty on four counts of first-degree assault raises two issues: (1) Was there sufficient evidence to support a necessary element of the crimes charged—that the assaults were committed "with intent to kill" the alleged victim in each of the four counts; and (2) Should the trial court have instructed the jury—particularly in the manner in which it

did—on the statutory presumption which flows from the fact that a defendant charged with a crime of violence was armed with a pistol and had no license to carry the same?

A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. *State v. Palmer*, 1 Wn. App. 152, 459 P.2d 812 (1969); *State v. McDaniels*, 30 Wn.2d 76, 190 P.2d 705 (1948).

Based on the record, the jury could well have determined that on November 24, 1970, the defendant went to the Tacoma offices of the Department of Employment Security to make his weekly report in support of his application for unemployment compensation benefits. While there, he objected to filling out a particular form and to reporting to the adjudication section. After having been told by the supervisor of benefits to complete the form and return with it the next week, and after having expressed his dissatisfaction with that procedure in an angry fashion, he left the office only to return within a half hour. Upon his return, he approached the supervisor's desk, declared that he was tired of being pushed around, and announced an intention to settle this matter once and for all. At that time he was carrying a holstered .44 caliber magnum pistol in his left hand. He grasped the pistol in his right hand, pointed it at the supervisor and fired twice. On one occasion the projectile pierced through the supervisor's left lower chest, exiting to the right of the lumbar area of the spine. As a result of this gunshot wound, the supervisor suffered permanent paralysis of both lower extremities together with other permanent and incapacitating internal injuries.

After firing the pistol, he reloaded it, left the office by a rear exit and returned to his automobile in a nearby alley. In the meantime, police had been summoned. Two patrolmen approached in a "paddy wagon" and noticed the

defendant sitting in his vehicle. The patrolman driver emerged from the police vehicle and the defendant fired at him. The patrolman returned the fire, and the defendant then fired at and into the windshield of the "paddy wagon" while the other patrolman was still sitting in the front seat. After a brief exchange of gunfire during which no one appears to have been hit by a projectile, the defendant ran down the alley and into another street, reloading his pistol as he ran.

At this point, a police lieutenant, driving a police prowl car, approached the defendant. The defendant pointed his pistol toward the windshield of the prowl car, but apparently did not fire the weapon. When the prowl car was approximately 25 feet from the defendant, the police lieutenant saw the gun pointed in his direction, and he believed Odom "was trying to kill me." He accelerated the vehicle and ran into the defendant, knocking him over and leaving him momentarily in a dazed condition. The lieutenant jumped out of the police car, approached the defendant from behind, and took the pistol from him. At that time the pistol was in the cocked position and was still loaded with two live rounds of ammunition. Before the gun was taken from the defendant, he said, "I've had enough," and after having been relieved of the gun, he addressed the lieutenant, "You son of a bitch, I wish I had shot you."

Mr. Odom purchased the gun in 1969. He applied for a permit to carry the weapon while he was working alone late at night in a drive-in restaurant. His application was denied.

The defendant was arrested and subsequently was charged with having committed four counts of first-degree assault—each count alleging a separate victim which he had assaulted "with intent to kill." The victims were—the supervisor of benefits, the two patrolmen who had been in the "paddy wagon", and the lieutenant who had been in the prowl car.

The assault was undoubtedly established in each instance. The only possibly debatable question is whether or

not the defendant had formed the requisite specific intent to kill each victim. The specific intent to kill, necessary to support a conviction of first-degree assault, is rarely proved by direct evidence. It may be properly inferred from all the circumstances. *State v. Shelton,* 71 Wn.2d 838, 431 P.2d 201 (1967). From all the facts and circumstances surrounding the events of November 24, 1970, an unprejudiced, thinking mind could well conclude beyond a reasonable doubt that Mr. Odom had formed a specific intent to kill the supervisor of benefits and the two patrolmen who had been in the "paddy wagon" when he fired the pistol at and toward them. The jury was warranted, therefore, in finding the element of specific intent to kill present in each of the three counts involving those three individuals.

■■ With regard to count 4—the count in which the police lieutenant was the alleged victim—the jury was faced with a slightly different problem. There is no evidence that Mr. Odom fired the weapon at or toward the lieutenant. The defendant contends, therefore, that at most he could only be convicted of second-degree assault on that count. In support of that contention, he directs our attention to an expression in *Benedict v. Board of Police Pension Fund Comm'rs,* 35 Wn.2d 465, 473, 214 P.2d 171, 27 A.L.R.2d 992 (1950): "By pointing a loaded revolver at his father, Richard Benedict was committing the crime of assault in the second degree, . . ." The expression in *Benedict* in no way supports the defendant's contention that first-degree assault with a firearm can only be committed by firing—and not merely by pointing—the weapon.

The assault upon the lieutenant occurred when Mr. Odom pointed the weapon at the officer. *State v. Miller,* 71 Wn.2d 143, 426 P.2d 986 (1967). The specific intent to kill, necessary to elevate the degree of the assault from second to first, may be inferred or gathered from outward manifestations by the words or acts of the party entertaining them, and from the facts or circumstances surrounding or attendant upon the act performed. The jury was so instructed.

Whether (1) the defendant formed the intent to kill and failed to carry it into execution because of the brevity of the continuation of the assault, or (2) the defendant never did form any specific intent to kill the lieutenant, was a fact resolvable within the capabilities of the jury in view of all the surrounding circumstances. By their verdict they did resolve that fact against the defendant beyond a reasonable doubt. We cannot say that there were insufficient facts and circumstances demonstrated in the record to support the jury's verdict. Accordingly, the trial court properly denied the defendant's motion in arrest of judgment.

The failure of the defendant to pull the trigger was a circumstance tending to negate a specific intent, but was not in and of itself conclusive of a lack of specific intent to kill. Incidentally, one of the other circumstances—relied upon by the prosecution as tending to establish the intent to commit the crime charged—was the fact that at the time of the assault the defendant was armed with a pistol and had no license to carry the same. This brings us to the second major issue in this appeal.

■■ The defendant has assigned error to the giving of instruction 25 as follows:

You are instructed that under the laws of the State of Washington no person shall carry a pistol concealed on or about his person, except in his place of abode or place of business, without a license therefor.

You are further instructed that in the trial of a person who has been charged with a crime of violence, the fact that the defendant was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit such crime of violence.

"Prima facie evidence" means evidence which may be accepted for proof of a particular fact. Such evidence even if not refuted by the defendant, should be given just such weight as it seems to you to merit.

The defendant's contention with regard to this instruction is twofold: (1) the constitutionality of the statute upon which the instruction is founded should be reviewed

in the light of a recent decision of the United States Supreme Court, *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); and (2) the instruction does not adequately explain or limit the use and mandate of the statutory presumption.

Instruction 25 was based upon the statutory presumption contained in RCW 9.41.030.[1] The defendant recognizes that the constitutionality of that statute has previously been established definitively in *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960) and—as applied to a conviction of first-degree assault—in *State v. Thomas,* 58 Wn.2d 746, 364 P.2d 930 (1961). He contends, however, that more recent opinions of the United States Supreme Court require application of a federal test of rationality between the fact proved and the fact presumed to support the constitutionality of statutes which permit factual presumptions to flow after proof of other facts. We agree; our only real concern is whether or not the federal test imposes a more stringent requirement than hitherto has been required.

We have previously indicated a necessity to apply the federal test of rationality. *State v. Finister,* 5 Wn. App. 44, 486 P.2d 114 (1971). That test, as enunciated in *Leary v. United States,* 395 U.S. 6, 36, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969), requires

> that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

In the case at bench, we are asked to declare that it can be said with substantial assurance that the presumed fact —a specific intent to kill—will, more likely than not, flow from the established fact that at the time of the commission of the offense, the defendant was armed with an unlicensed

---

[1] RCW 9.41.030 states: "In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence."

pistol. There are no empirical data in the record toward which we can point in support of such an assurance. Neither can we find such substantial assurance from our own experience, even giving due deferences to the legislative wisdom and expertise in this area. *State v. Davis,* 72 Wash. 261, 130 P. 95 (1913).

We conclude, therefore, insofar as the jury was permitted to infer a specific intent to kill either of the victims, *solely* from the fact the defendant was armed with an unlicensed pistol, instruction 25 was erroneously presented to the jury. Lest there be any misunderstanding of our holding, we do not declare that the statutory presumption may not be utilized where the defendant is charged with a crime of violence when a specific intent is not a necessary element of the crime charged.

Because of our conclusion, we need not determine whether the instruction failed to fully explain to the jury the weight—or lack of weight—which it could grant to such a presumption. We do declare, however, that prudence, if not strict necessity, would dictate that one additional statement should have been added to the instruction. What was said in 1960 in *State v. Person, supra* at 288 is still valid today:

> However, in the event that such an instruction should be requested and given in the future, we think the jury should be further instructed that the presumption is not binding upon the jury even though the fact to be presumed is unrefuted by the defendant, and that the state must still sustain the burden of proving the defendant's guilt beyond a reasonable doubt. In other words, it should be made clear that the statutory presumption permits, but in no way directs, the jury to convict the accused, and must be considered by the jury in the light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces the jury of the accused's guilt beyond a reasonable doubt.

Although we have determined that an erroneous instruction was presented to the jury, we do not conclude

188

that the defendant is entitled to receive a new trial as to all of the counts with which he has been charged. A defendant charged with a crime is constitutionally entitled to a fair trial, but not necessarily to a perfect trial. *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). When the record discloses an error in an instruction given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless. *State v. Britton,* 27 Wn.2d 336, 178 P.2d 341 (1947). *State v. Johnson,* 1 Wn. App. 553, 463 P.2d 205 (1969).

Can it be said that instruction 25, insofar as it indirectly permitted an inference of a specific intent to kill, influenced the jury? With regard to the first three counts of the information, at least, we think not. The defendant's actions speak so loudly and clearly that we can unequivocally say, as to counts 1, 2 and 3, the minds of an average jury would not have found the prosecution's case significantly less persuasive had the instruction been presented to the jury in a more restrictive form and had the jury been admonished not to utilize the statutory presumption as a basis to find in the defendant a specific intent to kill the alleged victims. The error in the instruction was, therefore, harmless error. *Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972). We are not so persuaded with regard to count 4—the count in which the police lieutenant was the alleged victim.

Accordingly, we affirm the judgment as to counts 1, 2 and 3; as to count 4, the judgment is reversed and remanded for new trial.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied February 26, 1973.

Review granted by Supreme Court April 20, 1973.