[No. 1300-2.    Division Two.    February 3, 1975.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM STEVE MILES, *Appellant.*

*Gary E. Gasaway,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PETRIE, J.—The defendant was charged, tried and convicted of the crime of second-degree assault in that he did "wilfully assault Demerle Fitzpatrick with a weapon, instrument or other thing likely to produce bodily harm to-wit: a pistol, . . ." The only issue on appeal is whether or not the defendant was denied a fair trial because the jury was instructed, as authorized by statute: Evidence that a person charged with a crime of violence was armed with an unlicensed pistol "shall be prima facie evidence of his intention to commit said crime of violence."

The uncontroverted facts establish that shortly before 2 a.m., in a tavern in downtown Tacoma, the defendant ordered a half-case of beer "to go." Mr. Fitzpatrick, the bartender, got the beer from a cooler and presented it to the defendant who objected to the price. Thereupon, the bartender—apparently known somewhat less than affectionately as "Big D"—and the defendant became embroiled in an argument. Two different versions of the argument were presented to the jury.

The State contends, through the testimony of Mr. Fitzpatrick, that without provocation the defendant "pulled a gun on me," pointed it "at my stomach," and "threatened me in some manner, about blowing my head off or something like that, . . ." Fitzpatrick "got scared," told the defendant he could have the beer without paying for it, and the defendant thereupon "ran out the door" without taking the beer. Fitzpatrick's version was supported by his wife, who was present in the tavern, and who summoned the police.

Defendant's version, supported by his brother who was present, is that he objected to the price of beer ($6 for the half-case) and told the bartender he would not buy it at that price. The bartender called him a "punk," threatened to beat him, and he then started to back away toward the door, when "two other guys" approached in an apparent attempt to assist the bartender. About that time the defendant's brother handed the defendant a gun. The defendant

"showed Big D the gun" and declared, "Don't try to scare me, I probably will shoot you." With that, "those guys stood there and started walking back" and "Big D started backing up when he saw the gun."

Defendant and his brother left the tavern, started to get into a taxicab in front of the tavern when police arrived and arrested the defendant. Police found the weapon, a .32 caliber Browning automatic pistol, with a loaded clip in place, under the back of the front seat of the taxicab. Defendant asserts that about a week before the encounter with Fitzpatrick he acquired the gun by taking it away from another person who had tried to use it against him. Neither the defendant nor his brother had a license to carry the pistol.

Several weeks after the encounter, at the request of defendant's then counsel (who no longer represented defendant at trial or upon appeal), Mr. Fitzpatrick signed a statement, which declared in part that the incident was a misunderstanding, that he did not believe defendant assaulted him, and that he did not believe defendant had "any intent to do me bodily harm."

After listening to the several versions of the facts, as summarized above, the jury was instructed in part:

> You are instructed that in the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence. The presumption thus created is not binding upon you, but should be given only such weight as it seems to you to merit. This presumption permits, but in no way directs, you to convict the accused, and must be considered by you in light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces you of the accused's guilt beyond a reasonable doubt.

The precise instruction was determined to be unavailable to the prosecution in a second-degree murder case as an aid to establish a defendant's general intent to commit murder. *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159 (1974). (*Rogers*

was decided subsequent to the trial in the case at bench.) Indeed, a majority of the *Rogers* court held the statute upon which the instruction is based, RCW 9.41.030, is itself an unconstitutional intrusion upon the rights of the defendant protected under the fifth and fourteenth amendments to the United States Constitution.

In *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974), the same majority appears to have limited the legislature's role in creating factual presumptions—in criminal matters—by asserting that the legislature, exercising its sense of justice, may eliminate the presumed fact ("intention to commit said crime") from the definition of the crime.

■ Under the *Rogers-Odom* doctrine, clearly the jury was instructed erroneously. Our only role in the case at bench therefore, is to examine whether or not the error was prejudicial. Within reasonable probabilities, had the error not occurred, might the result have been materially more favorable to the one complaining of it? Would the average juror have found the prosecutor's case significantly less persuasive had the jury not been instructed erroneously on the statutorily declared presumption which flows from the proven (admitted) fact that Mr. Miles was armed with an unlicensed pistol at the time of his encounter with Mr. Fitzpatrick? *State v. Rogers, supra.*

It seems rather apparent to us that to the average juror the prosecutor's case would have been significantly less persuasive had the jury not been erroneously instructed.

Judgment is reversed and the matter is remanded for new trial.

ARMSTRONG, C.J., and PEARSON, J., concur.