[No. 1534-2.   Division Two.   August 20, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE WAYNE LIVENGOOD, *Appellant*.

*Christopher J. Bell* and *Schultheis, Maddock & Bell,* for appellant.

*John Merkel, Prosecuting Attorney,* and *Richard B. Jones, Deputy,* for respondent.

JOHNSON, J.*—The appellant, Eugene Wayne Livengood, and his brother, Alfred Livengood, were charged in the Superior Court for Kitsap County on two counts—burglary in the second degree, and grand larceny. The day before the date set for trial, the brother, Alfred, entered a plea of guilty. He is, therefore, not a party to this appeal.

The facts briefly are that the defendant and his brother spent most of the daylight hours on December 28, 1973, riding around in defendant's car and visiting friends. At approximately 10 a.m. the two went to the home of a friend, where Alfred borrowed a bolt cutter, which was approximately 2 feet in length. At about 5 p.m. they drove to the Puget Sound Power and Light line headquarters, located a few miles east of Poulsbo, Washington. The area is a storeroom and supply headquarters for construction

---

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

materials, completely enclosed by a cyclone fence which is attached to a building. A loading dock used for storing scrap wire extends from the building into the enclosed area.

At approximately 8 p.m., as a coil of wire was thrown into defendant's car, Deputy Sheriff John McRee arrived. Upon seeing the deputy, the brothers, with defendant driving, drove off to the highway, accelerating to approximately 100 miles per hour, with the deputy in pursuit. After traveling approximately 2 miles, defendant stopped at a used car lot, where both brothers jumped from the car and ran into a large field of high grass to hide. McRee stopped his car, followed the driver, the defendant, and found him lying on his stomach. In the meantime, Sergeant Everett of the sheriff's office arrived. The defendant was arrested, frisked for weapons, handcuffed, and taken to the police car. After he was read the *Miranda* warnings by Sergeant Everett, he was asked who the second person was. He replied that he didn't know. He was further asked why he ran, and he responded, "I panicked." Shortly thereafter, the brother, Alfred, was apprehended in the field and brought to the police car.

Defendant's car was checked, it was found that the back seat had been removed and two coils of copper wire, one weighing 128 pounds and the other 101 pounds, covered with fresh mud, were observed, together with the bolt cutter, a hacksaw, chain, and pair of coveralls.

On investigation, it was discovered that a hole 4 feet high and 3 feet wide had been cut in the fence, and two more coils of copper wire were found next to the place defendant's car had been first observed. Drag marks and footprints were found in the wet mud between the fence and the loading dock; there appeared to be two sets of footprints. The wire coils found each weighed 150 to 200 pounds, and were too heavy for one man to lift. When Deputy McRee asked defendant a question (the record does not show what the question was), he indicated he did not want to say anything.

Alfred, after pleading guilty, testified for his brother, the defendant, stating that upon the arrival of the brothers at the enclosure he suggested that the defendant have a few beers at a nearby tavern and return in 2½ hours. He further testified that his purpose for going to the substation was to steal wire and that the defendant was not informed of his purpose; that he cut a hole in the cyclone fence and dragged several rolls of wire from the loading dock to the hole. Upon defendant's return, his brother, Alfred, threw one of the rolls into the car, defendant protested, and an argument ensued outside the car; about that time the sheriff's vehicle drove up. A stores clerk for the Puget Sound Power and Light Company testified as to the value of the wire, which was in excess of $75 for each coil.

■■■ The defendant first claims error because of the court's failure to instruct the jury on the lesser included offense of petit larceny. This assignment of error is without merit, for two reasons: (1) The only testimony as to value was that of the clerk, who fixed the value of each coil in excess of $75. There was no evidence on which a finding could be made on the lesser included offense. *State v. Snider*, 70 Wn.2d 326, 422 P.2d 816 (1967); *State v. Waldenburg*, 9 Wn. App. 529, 513 P.2d 577 (1973). (2) No instruction on petit larceny was requested. *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966).

Error is next claimed for the failure of the court to dismiss the charge of burglary on the grounds of insufficiency of the evidence. This assignment of error is also without merit. There was substantial evidence, both direct and circumstantial, to warrant a conviction. Apparently the jury did not believe the testimony of the brother, Alfred.

Defendant's third assignment of error is directed to the court's admission of his answers to questions of a police officer without having previously conducted a CrR 101.20W hearing (CrR 3.5) to determine admissibility. We find no error.

No request was made for such a hearing by the defendant and no question has been raised as to the fact that the

defendant was properly advised of his *Miranda* rights. Nor is any question raised by either the defendant or the record regarding the voluntariness of his answers. At the time of the questions, the officers knew there was another person involved, but did not know who or whether he was armed and posed a danger to them. The questions were of an investigatory rather than an accusatory nature. *See State v. Lane,* 77 Wn.2d 860, 467 P.2d 304 (1970); *State v. Toliver,* 6 Wn. App. 531, 494 P.2d 514 (1972); *State v. Lister,* 2 Wn. App. 737, 469 P.2d 597 (1970).

Error is also claimed by reason of the admission of evidence of the defendant's silence when questioned further by the officers. At the time he was in the patrol car, the defendant was asked a question, the nature of which does not appear in the record, and he indicated he "didn't want to say anything now." No further questions were asked. This testimony was received without objection. It is clear from the record that there was no prejudicial effect resulting from the testimony. *State v. Gibson,* 79 Wn.2d 856, 490 P.2d 874 (1971); *State v. Redwine,* 23 Wn.2d 467, 161 P.2d 205 (1945).

■ The court gave instruction No. 7, which states, in part: "If circumstantial evidence is considered by you, it should be consistent with the guilt of the defendant, and inconsistent with his innocence." The error raised is in the use of the word "should" instead of "must" or "shall." No exception was taken to this instruction, nor was any alternate instruction offered. Although it may have been better to have used the word "must" or "shall" rather than "should," the point was not called to the attention of the trial court and may not now be considered. *State v. Proctor,* 12 Wn. App. 274, 529 P.2d 472 (1974); *State v. Dean,* 70 Wn.2d 66, 422 P.2d 311 (1966).

The defendant moved to dismiss the information on the grounds that he was not tried within the 90 days provided by CrR 3.3(b). He now assigns error to the court's denial of said motion to dismiss.

The record discloses the following facts. The information was filed on January 2, 1974, and March 5, 1974, was the date fixed for trial. A day or two before March 5, the record does not reveal the actual date, the defendant's brother, Alfred, pleaded guilty to the charges. Both Alfred and the defendant were represented by the same attorney, Mr. Crawford, from the public defender's office. In view of Alfred's plea of guilty, Mr. Crawford believed he had a conflict of interest and could not represent defendant at trial. In addition, he had not been able to contact defendant and was therefore not prepared for trial. Shortly before trial, defendant did finally call Mr. Crawford at home, at which time he advised defendant that he could not represent him by reason of his conflict of interest and lack of preparation, and that the case should be continued. He also advised the defendant he did not have to be present on the 5th of March, and in fact the defendant was not in court on that day. Mr. Crawford discussed the matter with the prosecutor and the case was stricken from the trial calendar. Later, Mr. Ness from the public defender's office was substituted for Mr. Crawford; and on the 8th day of March the case was continued to May 14, 1974, on a written stipulation signed by defendant's counsel, Mr. Ness, also signed by the deputy prosecutor, and approved by the court. The motion to dismiss was filed on May 15, and heard the same day, at which time the testimony taken revealed the facts set forth above. It also appears from that hearing that the continuance was for the benefit of the defendant, and that no prejudice resulted by reason thereof. CrR 3.3 states, in part:

    **(b) Time Limit.** A criminal charge shall be brought to trial within 90 days following the preliminary appearance.

    . . .

    **(e) Continuances.** Continuances or other delays may be granted as follows:
    (1) On motion of the defendant on a showing of good cause.

(2) On motion of the prosecuting attorney if:

. . .

(iii) required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense.

(3) The court on its own motion may continue the case when required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense.

Obviously, the court would have committed grievous error if it declined to grant a continuance or to strike the case from the trial calendar on March 5. The defendant was absent; his counsel believed he had a conflict of interest and he was unprepared. The court could not have insisted on a trial on that date in fairness to the defendant. New counsel was assigned, and he, as the defendant's representative and on his behalf, stipulated to the trial date in May, which was beyond the 90 days.

We do not believe the defendant, under the circumstances of this case, can now be heard to say he disavows the motion and stipulation of his counsel, particularly when it was done for his benefit and did not prejudice him in the presentation of his defense.

We are of the opinion that the continuance could have been granted under CrR 3.3(e)(1), CrR 3.3(e)(2)(iii), or CrR 3.3(e)(3).

■ Defendant assigns error to the insufficiency of the evidence of a "structure" as defined by the burglary statute. This assignment of error is without merit. A careful reading of the statement of facts and examination of the diagram of the Puget Sound Power and Light substation readily convinces us that there is substantial evidence that the compound involved was one "where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound . . . " Such a compound is subject to being burglarized. *State v. Roadhs*, 71 Wn.2d 705, 708-09, 430 P.2d 586 (1967).

Finally, the primary issue in this appeal, it seems to us, is

whether RCW 9.19.030 creates an unconstitutional presumption that an unlawful breaking and entry is done with the intent to commit a crime. This issue was raised in the brief of the appellant, but for some reason not orally argued, although counsel was invited to do so.

■■ RCW 9.19.030 has been repeatedly upheld in the past. *State v. Galen*, 5 Wn. App. 353, 487 P.2d 273 (1971); *State v. Reid*, 74 Wn.2d 250, 444 P.2d 155 (1968); *State v. Durning*, 71 Wn.2d 675, 430 P.2d 546 (1967); *State v. Anderson*, 5 Wash. 350, 31 P. 969 (1892). However, the statute must now meet the test announced in *State v. Odom*, 83 Wn.2d 541, 520 P.2d 152 (1974), and *State v. Rogers*, 83 Wn.2d 553, 520 P.2d 159 (1974).

In *State v. Odom, supra,* and *State v. Rogers, supra,* the Supreme Court struck down RCW 9.41.030 as an unconstitutional intrusion upon the rights of the defendant, protected under the fifth and fourteenth amendments to the United States Constitution. RCW 9.41.030 provided:

> In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence.

. These cases, *State v. Odom, supra,* and *State v. Rogers, supra,* hold as to RCW 9.41.030 that the presumed fact, specific intent to commit first-degree assault in *Odom*, and murder in *Rogers*, was not shown beyond a reasonable doubt to follow the single proven fact that the defendant was armed with an unlicensed handgun.

In support of that holding, the court cites *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *Turner v. United States*, 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642 (1970); *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *United States v. Johnson*, 433 F.2d 1160 (D.C. Cir. 1970); *Wilbur v. Mullaney*, 473 F.2d 943 (1st Cir. 1973).

In the case at bench, the defendant was charged with second-degree burglary. RCW 9.19.020. The court instructed the jury in the language of RCW 9.19.030, which provides:

Every person who shall unlawfully break and enter or unlawfully enter any building or structure enumerated in RCW 9.19.010 and 9.19.020 shall be deemed to have broken and entered or entered the same with intent to commit a crime therein, unless such unlawful breaking and entering or unlawful entry shall be explained by testimony satisfactory to the jury to have been made without criminal intent.

The question here presented is: In view of the facts and circumstances of this case, has the presumed fact—intent to commit a crime—been shown beyond a reasonable doubt to follow the proven fact—forcible breaking and entry?

We believe that it has. However, we are also of the opinion that the giving of the instruction was harmless and not prejudicial to the defendant. *State v. White*, 72 Wn.2d 524, 433 P.2d 682 (1967). We do not believe the average juror would have found the State's case significantly less persuasive had the jury not been instructed on the statutory presumption of RCW 9.19.030. *Schneble v. Florida*, 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *State v. Odom, supra*; *State v. Rogers, supra*.

Judgment affirmed.

Leahy (A.C.J.) and Rummel, JJ. Pro Tem., concur.