[No. 2807–2.  Division Two.  July 25, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY KEITH BENNETT, *Appellant.*

*Brian P. Coughenour,* for appellant.

*Craig A. Ritchie, Prosecuting Attorney,* for respondent.

REED, J.—Defendant Larry Keith Bennett appeals his convictions of second–degree burglary and third–degree theft. We affirm.

On the evening of January 4, 1977, at approximately 10 p.m., the Port Angeles police received a call from a local

tavern regarding an intoxicated patron. Upon arrival, the officers recognized the defendant and, because they were acquainted with him, elected to take him home. He was left with Tim Borden, a young man who was caring for the two children of the woman who resided with defendant.

At approximately 11:30 p.m. the police received a report of a man being dragged by another between two houses near Olson's Grocery. Subsequent investigation revealed that the glass front door of Olson's Grocery had been broken and the store burglarized. Several cartons of cigarettes were missing, as well as a number of bent and twisted keys and coins usually kept in a back drawer of the cash register.

About 1:30 a.m. a family disturbance was reported at defendant's residence located one block from Olson's Grocery. The police arrived and found defendant in a semi-intoxicated condition on the living room couch. Several misshapen coins and packs of cigarettes of various brands were strewn around the room. These items were subsequently identified by the store owner. The defendant was arrested and charged with the burglary and theft.

At trial the prosecution called Tim Borden as a witness. His testimony may be summarized as follows: Borden arrived at defendant's residence early in the evening of January 4 to visit with defendant and his woman companion. Shortly after Borden's arrival defendant left the home. When defendant failed to return within an hour, the woman went to search for him, leaving Borden to watch the two children. The woman returned later but left again when informed defendant had not reappeared. The police brought defendant home in a visibly intoxicated condition about 10:30 p.m. Defendant remained only a few minutes before leaving the house again. Because it was late and Borden had to attend school the next day, he left the home to request a friend to assume babysitting duties. As Borden walked past Olson's Grocery he noticed broken glass and observed defendant rummaging around inside. After a few moments defendant stumbled out of the store and Borden dragged him home. Borden left defendant's residence soon

thereafter but was stopped near Olson's Grocery by police officers investigating the incident. In answer to police inquiries about defendant's activities that night, Borden told them defendant had passed out after the police brought him home and did not again leave the house.

At trial a witness confirmed she had reported observing one individual dragging another away from Olson's Grocery. Another witness testified that during the domestic altercation defendant pulled the coins from his pocket and scattered them about the room. Also, in an attempt to impeach Borden, defendant offered three witnesses who testified that Borden had told them he alone burglarized Olson's Grocery to obtain money and cigarettes.

Defendant's first contention is that the prosecution impermissibly commented on his exercise of his constitutional right to remain silent. After the State rested its case, defendant sought the admission of his written statement to the police wherein he recounted his actions between 5 p.m. and 10:30 p.m. on the night of the burglary. The State's objection to this offer was couched in the following terms:

> Number 5, your Honor, is simply hearsay and is not admissible, because it is hearsay. There has to be testimony. It's not an admission. It's not a confession and therefore doesn't get around any of the hearsay rules. *The maker of the statement can testify.*

(Italics ours.) Defendant immediately moved for a mistrial. The trial court refused to admit the statement and denied the motion for a mistrial. Defendant elected not to take the stand and rested.

■ The prosecution is prohibited from commenting on an accused's exercise of the right to remain silent. *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965); *State v. Wilson*, 3 Wn. App. 745, 477 P.2d 656 (1970). The test employed is whether the language used was manifestly intended as, or was of such character that a jury would naturally and necessarily assume it to be, such a comment. *United States v. Wilson*, 500 F.2d 715 (5th Cir. 1974); *United States v. Anderson*, 481 F.2d 685 (4th Cir.

1973). Here, it is evident the prosecutor was merely explaining the nature of his objection to admission of the statement; his remarks were proper argument and were not manifestly intended to nor did they in fact necessarily attract attention to defendant's failure to testify. *People v. Kroll,* 4 Ill. App. 3d 203, 280 N.E.2d 528 (1972); *United States ex rel. Maisonet v. La Vallee,* 405 F. Supp. 925 (S.D.N.Y. 1975); *United States ex rel. D'Ambrosio v. Fay,* 349 F.2d 957 (2d Cir. 1965). In any event, any possible prejudice inhering in the remarks was removed when the trial court admonished the jury to disregard counsel's legal argument on the admissibility of evidence and to consider only the testimony of the witnesses and the exhibits actually admitted.

Defendant next maintains it was error not to admit his statement. We disagree. Self–serving out–of–court statements of a defendant are not admissible as an exception to the hearsay rule, when offered on his behalf. Here it was not the State which sought to place the statement in evidence as an admission; defendant's narrative appears not to have been inculpatory or incriminating in any respect. This was simply an attempt on defendant's part, without taking the stand, to place his version of the incident before the jury. If permitted, this would prevent the prosecution from subjecting him to cross–examination, thus depriving the jury of an objective standard for determining the probative value of the statement. *State v. King,* 71 Wn.2d 573, 429 P.2d 914 (1967); *State v. Sharp,* 15 Wn. App. 585, 550 P.2d 705 (1976); *State v. Haga,* 8 Wn. App. 481, 507 P.2d 159 (1973). The trial court's ruling was correct.

Defendant next contends the trial court erred when it refused to admit into evidence a pair of slacks allegedly worn by defendant the night of the burglary. The defendant hoped to impeach Borden's testimony that he had dragged defendant home through neighboring yards and an alley by showing the absence of grass, dirt or blood stains on the slacks. This argument is also without merit. Defense counsel had withdrawn the slacks from the police property

room the day before trial. Although defendant's woman companion stated she recognized the slacks as the ones worn by defendant that night, there was no testimony the slacks were in the same condition at trial as they were on the night in question or even at the time they were removed from police custody. In the absence of a showing the slacks had been unaltered, it was not error to deny their admission into evidence. *State v. Curry,* 14 Wn. App. 775, 545 P.2d 1214 (1976); *State v. Tollett,* 12 Wn. App. 134, 528 P.2d 497 (1974).

We are likewise unconvinced by defendant's assertion that the trial court erred in the giving of an instruction on aiding and abetting. It is now settled that, even though the defendant is the only person charged in an information and is not explicitly accused of aiding and abetting, he may be convicted for his participation in the commission of a crime as an aider and abettor. *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Frazier,* 76 Wn.2d 373, 456 P.2d 352 (1969); *State v. Brown,* 75 Wn.2d 611, 452 P.2d 958 (1969). Under RCW 9A.08.020, every person involved in the commission of a felony, whether he directly commits the offense or aids and abets in its commission, is regarded and punished as a principal. Here, defendant was charged as a principal with both burglary and theft; the evidence was undisputed that these crimes had been committed. The sole question confronting the jury was whether they had been committed by defendant. The jury could have believed Borden was telling the truth when he blamed defendant for the crimes; on the other hand the jury might have believed Borden played a more active role than he wished to acknowledge. In either case, defendant would be guilty, either as a principal or as an aider and abettor. *State v. Carothers, supra.*

In his final assignment of error, defendant assails instruction No. 9, which was as follows:

If a person enters or remains unlawfully in a building, *it may be inferred* that that person acted with intent to commit a crime against a person or property therein,

unless the evidence explains to your satisfaction that the entering or remaining was without such criminal intent.

(Italics ours.) Defendant excepted to this instruction on the ground that it violated his right to remain silent by compelling him to testify as to his lack of intent. We also interpret his argument as raising due process considerations— *i.e.,* that this instruction lessened the State's burden of proving intent. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

We disagree with both contentions. Clearly, the last dependent clause of the instruction does not state that defendant must personally explain his intent. The instruction merely refers to the evidence, from whatever source, which the jury should consider in determining whether to accept or reject the inference of criminal intent. In *State v. Searle,* 339 So. 2d 1194 (La. 1976), the defendant argued that his right against self–incrimination was "reversed" by a statute which provided that unexplained possession of property recently stolen creates a presumption that the possessor committed the theft. In disposing of this contention, the Supreme Court of Louisiana said at page 1199:

It [the presumption] leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute does not create but which is inherent in the case.

Nor does the instruction's inference of intent, which is based upon RCW 9A.52.040, contravene defendant's due process rights. In the recent case of *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), our State Supreme Court held that the *presumption* of intent provided for in former RCW 9.19.030 did not operate to relieve the State of its burden of persuasion, but only shifted to the defendant the burden of producing some evidence in opposition to it. RCW 9A.52.040 has reduced the former presumption to a

standard inference, which merely informs the jury it is permitted, but not obligated to find the requisite intent. Thus the concerns of *Roberts* and *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960) are not present. The instruction was proper.

Judgment affirmed.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied August 30, 1978.