928

[No. 8736–3–I.   Division One.   September 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
JOSEPH MACREADY, *Appellant.*

*Yvonne Huggins–McLean* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Ryan* and *Nicole MacInnes, Deputies,* for respondent.

DURHAM, A.C.J.—A jury convicted the appellant, Daniel MacReady, of second degree burglary. In the early morning hours of July 29, 1979, Viola Brister and her two teenage children, William and Kathy, were asleep in their house. Mrs. Brister awoke at 5 a.m. and went downstairs where she found a man asleep in the living room stairwell. She did not recognize him, and neither did her son, when awakened. William and Kathy armed themselves with baseball bats and locked themselves in Kathy's bedroom while their mother called police.

The intruder awoke and ran away as the police arrived. The police apprehended him with the aid of dogs. When the man was returned to the house, Kathy Brister recognized him as Daniel MacReady, the brother of one of her girlfriends.

William Brister found a garbage can with bricks piled on top under a bathroom window which had been broken. In addition, a basement window had been forced open and a bottle of beer was spilled on the basement floor. Both William and a police officer indicated that MacReady had been drinking. A search of MacReady's pocket produced a Space Needle paperweight, worth about $1.50, which belonged to the Bristers and had been kept on the sill of the basement window.

The information charged MacReady with violating RCW 9A.52.030(1), as follows:

> That the defendant Daniel Joseph Mac[R]eady, in King County, Washington, on or about July 29, 1979, did enter and remain unlawfully in a building, located . . . in said county and state, with intent to commit a crime against a person or property therein;

At the close of the State's case, the defense moved to dismiss on the basis of insufficient evidence of the required

criminal intent. The court denied the motion. MacReady did not take the stand, and the defense presented no witnesses.

The court instructed the jury in the language of the burglary statute; that is, to convict MacReady of second degree burglary, the jury must find that he "entered or remained unlawfully in a building" and that the "entering or remaining was with intent to commit a crime against a person or property therein". Instruction 3. The jury was instructed that the defendant was presumed innocent, and that each element of the crime charged must be proved beyond a reasonable doubt. Instruction 2. The jury was also instructed on the inference of intent as follows:

> Any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to you to have been made without criminal intent.

Instruction 5; RCW 9A.52.040.

MacReady first assigns error to the court's instruction 5. He claims that this instruction shifted the burden of proof to him to disprove criminal intent, an element of the crime, in violation of due process.

■■ MacReady's contention was addressed by this court in *State v. Bennett,* 20 Wn. App. 783, 582 P.2d 569 (1978). In discussing the same inference questioned here, the court stated:

> Nor does the instruction's inference of intent, which is based upon RCW 9A.52.040, contravene defendant's due process rights. In the recent case of *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), our State Supreme Court held that the *presumption* of intent provided for in former RCW 9.19.030 did not operate to relieve the State of its burden of persuasion, but only shifted to the defendant the burden of producing some evidence in opposition to it. RCW 9A.52.040 has reduced the former presumption to a standard inference, which merely informs the jury it is permitted, but not obligated to find the requisite intent. Thus the concerns of [*State v.*]

*Roberts* [88 Wn.2d 337, 562 P.2d 1259 (1977)] and *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960) are not present.

*Bennett,* at 789–90; *see also State v. Hebert,* 20 Wn. App. 656, 581 P.2d 1084 (1978). We find this reasoning persuasive.

Our position is supported when the constitutional test for criminal statutory permissive presumptions is applied:

> It is well settled that statutory presumptions in criminal cases do not violate the Fifth Amendment unless there is no "rational connection between the facts proved and the fact presumed." *Leary v. United States,* 395 U.S. 6, 33, 89 S.Ct. 1532, 1546, 23 L.Ed.2d 57 (1969); *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943); *United States v. Black,* 512 F.2d 864, 869 (CA9 1975). Manifestly, a criminal statutory presumption is not "irrational" or "arbitrary" and thus unconstitutional if the presumed fact is "more likely than not" to flow from the facts as shown by the record. *Leary, supra,* 395 U.S. at 36, 89 S.Ct. at 1548.

*United States v. Wolters,* 656 F.2d 523, 526 (9th Cir. 1981); *see also United States v. Gainey,* 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754 (1965). When we measure the inference of intent allowed by RCW 9A.52.040 against this standard, we find no constitutional defect; a close connection exists between the facts proved and the fact inferred. Criminal intent (the inferred fact) more likely than not flows from unlawful entering or remaining (the proven facts). This is according to "[c]ommon knowledge and experience . . . The noncriminal reasons for unlawfully entering a dwelling are few." *State v. Bishop,* 90 Wn.2d 185, 189, 580 P.2d 259 (1978).

MacReady also argues that the challenged instruction requires the defendant to present evidence to disprove criminal intent. We disagree. As stated by the *Bennett* court:

> The instruction merely refers to the evidence, from whatever source, which the jury should consider in determining whether to accept or reject the inference of criminal intent.

*Bennett,* at 789; *State v. Taplin,* 9 Wn. App. 545, 513 P.2d 549 (1973).

MacReady next argues that the jurors could have assumed that instruction 5 required them to find criminal intent unless MacReady presented satisfactory evidence to the contrary. He claims that the jury interpreted the instruction as a mandatory presumption, and that the trial court should have given an explanatory instruction, citing *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) and *State v. Savage,* 94 Wn.2d 569, 618 P.2d 82 (1980). He draws this argument from the following inquiry of the jury, addressed to the trial court during deliberation:

> In [instruction] No. 5 do the words "may be inferred" mean—"will be"[?]
> [I]f the defence [*sic*] did not present evidence, explaining the entering, do we *have* to infere [*sic*] criminal intent[?]

To this the court answered, in writing: "You must answer these questions from the instructions given."

We do not believe that the jury's question supports MacReady's contention. In upholding an instruction based on statutory language in *State v. Johnson,* 7 Wn. App. 527, 500 P.2d 788 (1972), *aff'd,* 82 Wn.2d 156, 508 P.2d 1028 (1973), this court has stated that

> A court's jury instructions may describe the crime charged in the language of the statute. . . . The court may supplement the statutory language by an explanatory instruction. . . . However, an explanatory instruction is unnecessary if the statutory language is reasonably clear and not misleading to persons of ordinary intelligence. . . . If the implicit meaning of a statutory phrase is apparent to a man of ordinary intelligence, it is unnecessary to make it explicit.

*Johnson,* at 539–40. The trial court properly told the jury, in effect, to go back and reread its instructions. Upon doing so, the jury raised no further questions, nor is there anything in the record to indicate that the jury had any difficulty in arriving at its verdict. The instruction clearly

stated that intent "may be inferred." These words are of common understanding; they are reasonably clear and are not misleading to people of ordinary intelligence. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968); *State v. Humphries,* 21 Wn. App. 405, 586 P.2d 130 (1978); *State v. Edwards,* 17 Wn. App. 355, 563 P.2d 212 (1977); *State v. Johnson, supra.*

Both MacReady and the dissenting opinion herein rely on *State v. Savage, supra,* for support of the argument that the jury must receive an explanatory instruction. However, we believe that reliance on that case is misguided. First, *Savage* can be distinguished on its facts. It dealt with a mandatory rebuttable presumption, not with a permissible inference like the one now before this court.[1] The two evidentiary devices are distinct legal concepts, and different standards apply to each.[2] *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 156–60, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). Thus, even if the rules set forth in *Savage* are correct, they apply only to mandatory rebuttable presumptions, not to permissible inferences.

In addition, there is good reason to doubt *Savage* as solid authority. The case consists of three opinions, none of which commanded a majority of the court. The plurality

---

[1] The jury in *State v. Savage,* 94 Wn.2d 569, 571–72, 618 P.2d 82 (1980) was instructed, in part, as follows: "'If and when the evidence shows that one person assailed another violently with a dangerous weapon likely to kill, and which in fact did kill the person attacked, such evidence gives rise to a presumption that the assailant intended death or great bodily harm.

"'The presumption, however, may be overcome by contrary evidence, and any such evidence is sufficient to overcome it which creates in the mind of the jurors a reasonable doubt that the defendant's intent was so presumed. In the absence of evidence to the contrary, the presumption must prevail.'"

[2] The plurality opinion in *State v. Savage, supra,* merges mandatory rebuttable presumptions and permissive inferences and creates a new presumption which it calls "semi–mandatory." *Savage,* at 575 n.1. We doubt if such a creature exists. As pointed out by the dissent in *Savage,* the "semi–mandatory" presumption harbors serious logical flaws which could easily be avoided by adherence to principles that have governed the application of presumptions in criminal law for years. *Savage,* at 592 (Rosellini, J., dissenting); *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979).

and dissenting opinions each were signed by four justices. As discussed in the dissenting opinion, the plurality opinion contains logical inconsistencies which seriously weaken its holdings regarding the use of presumptions in criminal trials. For these reasons, we do not feel bound by *Savage* to hold that the court in the instant case should have given an explanatory instruction.

MacReady next contends that by failing to allege the particular crime he intended to commit when he unlawfully entered, the information failed to inform him of the offense with which he was charged, as guaranteed by the United States and Washington Constitutions. U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). Because MacReady did not object to the sufficiency of the information nor file a motion for a bill of particulars, he has waived this issue on appeal and we will not consider it. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968).

MacReady also argues that because the instructions did not specify the underlying crime that he intended to commit, the jury could have returned a nonunanimous verdict by relying on more than one underlying crime. Finally, he claims that if theft was the underlying crime, the jury should have received an instruction on the elements of theft. We rejected an identical contention in *State v. Chelly,* 32 Wn. App. 916, 651 P.2d 759 (1982).

The judgment is affirmed.

JAMES, J., concurs.

RINGOLD, J. (dissenting)—For the reasons expressed herein and in my dissent in *State v. Chelly,* 32 Wn. App. 916, 651 P.2d 759 (1982), I disagree with the majority. MacReady was found asleep in the basement of the home of one of his sister's girlfriends. He was intoxicated. A glass paperweight valued at $1.50, which had been on the sill of the window through which he entered the house, was found in his pocket.

The information charged, in the language of the burglary

statute, that he "did enter and remain unlawfully in a building . . . with intent to commit a crime against a person or property therein." Because of the inference of intent statute, RCW 9A.52.040, which allows the jury to infer intent from the illegal entry, MacReady had to be prepared to defend against evidence of intent to commit theft, rape, assault, arson, indeed any crime that can be committed "against a person or property therein." The failure of the court to instruct the jury as to the elements of various underlying intended crimes made it impossible for the jury to find beyond a reasonable doubt, even with the aid of the statutory inference, that MacReady intended "to commit a crime against a person or property therein." *See Chelly* (Ringold, J., dissenting).

I also disagree with the majority's holding that the giving of the inference of intent statute as an instruction was not error.[3] Although the majority correctly finds the inference of intent statute constitutional, it fails to reach MacReady's contention that the trial court erred by failing to explain the instruction to the jury.

MacReady excepted to the giving of the inference of intent instruction on the grounds that it would be misinterpreted by the jury. This fear was borne out when, during deliberations, the jury sent a note to the trial judge asking the court to clarify the instruction: "Do the words 'may be inferred' mean—'will be'[?] [I]f the defense did not present

---

[3]RCW 9A.52.040 provides:

Inference of intent. In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

The court's instruction 5 provided:

Any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to you to have been made without criminal intent.

It should be noted that the omission of the word "such" from the court's instruction apparently requires the defendant to negate *all* criminal intent, not merely "intent to commit a crime against a person or property therein."

evidence, explaining the entering, do we *have* to infer criminal intent[?]" The court replied, "You must answer these questions from the instructions given."

Ordinarily, the decision to instruct in statutory language is within the trial court's discretion, *State v. Johnson,* 7 Wn. App. 527, 500 P.2d 788 (1972), *aff'd,* 82 Wn.2d 156, 508 P.2d 1028 (1973), and an explanatory instruction is not generally necessary if the statutory language is reasonably clear. *State v. Humphries,* 21 Wn. App. 405, 586 P.2d 130 (1978). The majority attempts to avoid the problem of the *actual* jury confusion in this case by holding that the words "may be inferred" are words of common understanding, "reasonably clear and . . . not misleading to people of ordinary intelligence" so that no explanatory instruction was necessary.

The difference between "infer" and "presume," however, is one more readily apparent to lawyers than to jurors. *Sandstrom v. Montana,* 442 U.S. 510, 528, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) (Rehnquist, J., concurring). A permissive inference, though the "least restrictive form of presumption," is nevertheless a presumption, and is always subject to possible jury misinterpretation if embodied in an instruction without an adequate explanation. *State v. Savage,* 94 Wn.2d 569, 574, 618 P.2d 82 (1980); *Sandstrom v. Montana, supra.*

Whenever a presumption is employed in a criminal case, it is essential that the jury instructions fully and adequately explain the nature and operation of the presumption to the jury. *See Sandstrom v. Montana, supra* at 514–19; *State v. Roberts* [88 Wn.2d 337, 341, 562 P.2d 1259 (1977)]. The jury instructions must, therefore, specifically inform the jury that the defendant bears no more than a burden of producing "some evidence" to rebut the presumed fact, and that the ultimate burden of proving every element of the offense beyond a reasonable doubt must always remain upon the prosecution. *State v. Bishop* [90 Wn.2d 185, 188–89, 580 P.2d 259 (1978)]; *State v. Roberts, supra* at 340–41. *The jury instructions must also expressly instruct the jury that it is always free to reject the presumption even if the defendant*

*fails to produce evidence to the contrary of the presumed fact. State v. Roberts, supra at 341–43; State v. Odom* [83 Wn.2d 541, 545, 520 P.2d 152 (1974)] . . .
(Italics mine.) *State v. Savage, supra* at 576.[4]

In *State v. Caldwell,* 94 Wn.2d 614, 618 P.2d 508 (1980), the Supreme Court held that general instructions on the presumption of innocence and the State's burden of proof beyond a reasonable doubt are insufficient to explain the application of a presumption, citing *Sandstrom v. Montana, supra.* In *State v. Holcomb,* 31 Wn. App. 398, 402, 642 P.2d 407 (1982), another division of this court strongly implied that an instruction was vulnerable to attack under *Roberts* and *Savage* even though the instruction at issue stated, "'This presumption is not binding upon you and it is for you to determine what weight, if any, such presumption is to be given.'" The cases cited by the majority are of questionable value in determining the adequacy of the inference of intent instruction.

It is highly probable that without an explanatory

---

[4]Although *State v. Savage,* 94 Wn.2d 569, 618 P.2d 82 (1980), had not yet been decided at the time of MacReady's trial, the requirement that a jury be made to understand the working of a presumption antedates the decision in that case. *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) was brought to the trial court's attention when MacReady excepted to the inference of intent instruction. The requirements of *State v. Savage, supra,* are also established in earlier Washington cases. *See, e.g., State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960); *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

The majority urges that the differences between mandatory and permissive presumptions justify requiring explanatory instructions for the former, but not the latter, and attempt to distinguish *State v. Savage, supra,* for that reason. While this distinction is crucial in deciding the constitutionality of a statutory presumption against a claim that the presumption lessens or shifts the State's burden, *see, e.g., County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979), the question here is not the constitutionality of the inference of intent. It is clearly constitutional. *State v. Bennett,* 20 Wn. App. 783, 582 P.2d 569 (1978). The critical issue before us is whether the court should have explained the operation of the inference of intent, which is a permissive presumption, to the jury so that the jury would be certain to apply the inference in a constitutional manner. The prophylactic instructions mandated by *Roberts* and *Savage* would have explained the inference and should have been submitted to the jury, especially in light of the jury's question to the court.

instruction one or more jurors interpreted the inference of intent instruction as a mandatory rebuttable presumption[5] rather than as a permissive inference. This danger was recognized in *State v. Deiro,* 20 Wn. App. 637, 640–41, 581 P.2d 1079 (1978), where the court observed

> the second part of the instruction could confuse a jury under different circumstances. Similar language was held to be a necessary part of an instruction based upon the superseded [presumption of intent] statute. *State v. Briand,* 15 Wn. App. 352, 549 P.2d 29 (1976). However, when this language is added to an "inference" instruction based upon RCW 9A.52.040, it could be read to imply that intent is to be "presumed" in absence of "evidence satisfactory to the jury." . . .
>
> . . .
>
> The qualifying language, added to the inference instruction, could, in some cases, emphasize the fact that there is no evidence to explain a defendant's intent when unlawfully entering or remaining in a building. When there is no such evidence, the better rule would be to delete the language.

(Footnote omitted.)

In 1977, the Washington Supreme Court Committee on Jury Instructions dealt with this problem by recommending that no instruction be given on the statutory inference of intent:

> The committee feels that it may be error to give an instruction on the inference set out in RCW 9A.52.040.
> . . .
> . . .
> . . . The matter of proving a specific intent by circumstantial evidence is better left to argument of counsel.

Comment, WPIC 60.05, 11 Wash. Prac. 304 (1977). Recently the same committee approved the following instruction, with the comment that the bracketed portion

---

[5]The predecessor of the statutory inference of intent was a mandatory rebuttable presumption, providing that once unlawful entry was established a defendant "shall be deemed" to have entered with intent to commit a crime unless the entry is explained by testimony satisfactory to the jury. Code of 1881, § 828; *see State v. Chelly,* 32 Wn. App. 916, 651 P.2d 759 (1982) (Ringold, J., dissenting).

should be used "only if there is evidence on that issue."

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein [unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent.] *This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.*

(Italics mine.) WPIC 60.05, 11 Wash. Prac. 104 (Supp. 1982). While the highlighted part of this instruction goes a long way toward satisfying the requirements of *State v. Savage, supra,* it may not be entirely sufficient. *See State v. Holcomb, supra.*

The inference of intent statute allows the State, in an appropriate case, to survive a motion for dismissal based on lack of evidence of the specific crime the defendant intended to commit. An instruction in the language of the statute, however, comes dangerously close to being a comment on both the evidence of unlawful entry and any evidence tending to explain the defendant's presence. The jury need not be instructed by the court as to which inferences may or may not be made in its deliberations. This is better left to argument of counsel under the general instruction on circumstantial evidence. *See* WPIC 5.01.

The inference of intent instruction given in this case failed to expressly advise the jury that it need not infer intent from the unlawful entry if it chooses not to. *State v. Savage, supra.* The giving of this instruction over MacReady's exception was therefore erroneous. Following the jury's request for assistance, their confusion was obvious. The trial court could then have corrected the error by submitting an instruction that the jury "is always free to reject the presumption [or inference] even if the defendant fails to produce evidence to the contrary of the presumed fact." *Savage,* at 576.

By excusing the error and holding that the inference of intent instruction was not misleading, the majority ignores

reality. On the meager evidence before it, the jury could have presumed intent rather than finding it beyond a reasonable doubt. I would reverse and remand for a new trial.

Reconsideration denied October 8, 1982.

Review granted by Supreme Court December 17, 1982.