FILED
COURT OF APPEALS
DIVISION II

2015 SEP -9 AM 11: 56

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>CHRISTIAN REED BAILEY,<br><br>Appellant. | No. 46308-3-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Christian Bailey appeals his conviction for unlawful possession of a stolen vehicle.[1] He argues that the State's direct examination opened the door to an otherwise inadmissible hearsay statement and therefore, the trial court erred by refusing to admit the statement. He also argues that the trial court erred by instructing the jury on reasonable doubt. We disagree and affirm.

## FACTS

On January 28, 2013, Bambi Hope reported her vehicle, a 1982 Chevy truck, stolen from her place of business in Spanaway. On June 10, Douglas Laisy reported two motorcycles stolen from his residential property in Eatonville.

In late June, acting on a tip, Hope located her truck on property in Graham. Hope took photographs of her truck and turned them over to law enforcement. Law enforcement obtained a search warrant for the Graham property based on the information Hope supplied.

When officers arrived to execute the search warrant, they contacted Bailey, the primary resident on the property, and showed him the warrant. An officer read Bailey his Miranda[2] rights.

---

[1] RCW 9A.56.068, .140.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Bailey waived his rights and agreed to talk to the officers. Bailey accompanied the officers on their search and used his keys to unlock various outbuildings.

In one of the outbuildings, officers found two motorcycles—one belonging to Laisy. In response to a question about the motorcycles, Bailey told officers that he owned the motorcycles. He also stated that he had purchased one of the motorcycles.

Officers also found Hope's truck on the property. The truck looked like it was being scrapped—taken apart to be sold. Bailey told officers that David Dean brought the truck onto the property some time ago.

The State charged Bailey with two counts of unlawful possession of a stolen vehicle for possessing Hope's truck and Laisy's motorcycle.

Pretrial, the State moved to exclude Bailey's statement to law enforcement that he purchased one of the motorcycles.[3] The State argued the statement constituted inadmissible hearsay if offered by Bailey. The State indicated that it planned to offer Bailey's statement that he owned the motorcycles, but it would not offer Bailey's statement that he purchased the motorcycle. Bailey argued that once the State elicited Bailey's statement that the motorcycles were his, it opened the door for the remainder of Bailey's statement, i.e., that he purchased the motorcycle. After a confession hearing pursuant to CrR 3.5, the trial court ruled against Bailey.

Bailey objected to the trial court's instruction on reasonable doubt, which was the standard WPIC 4.01 instruction with the optional abiding belief language included in the last paragraph. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 4.01, at 85 (3rd ed. 2008). The trial court rejected Bailey's request to omit the optional abiding belief

---

[3] Because the parties do not raise the issue, we assume for purposes of this opinion that the motorcycle that Bailey claimed to have purchased is the motorcycle underlying Bailey's unlawful possession of stolen property charge.

language from the WPIC 4.01 instruction or to provide an additional instruction defining "abiding belief." The trial court stated that it understood counsel's attempt to better define abiding belief, but that the court did not believe it had legal authority to do so.

The jury found Bailey not guilty of unlawful possession of Hope's stolen truck and guilty of unlawful possession of Laisy's stolen motorcycle. Bailey appeals his conviction.

## ANALYSIS

### I.    EVIDENTIARY RULING

Bailey argues that the trial court erred by excluding his statement to officers that he purchased one of the motorcycles. He argues that the State opened the door to his complete response when it presented testimony that Bailey responded to an officer's question about the motorcycles by claiming ownership.[4]

A trial court has considerable discretion in administering the open-door rule. *Ang v. Martin*, 118 Wn. App. 553, 562, 76 P.3d 787 (2003), *aff'd*, 154 Wn.2d 477, 114 P.3d 637 (2005). Therefore, we review a trial court's decision under the open-door rule for an abuse of discretion. *State v. Ortega*, 134 Wn. App. 617, 626, 142 P.3d 175 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

"[W]hen a party opens up a subject of inquiry on direct or cross-examination, he contemplates that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced." *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). Under the "open door" rule, if one party raises

---

[4] Bailey's sole argument for admissibility to the trial court was the open-door rule; he did not argue that the statement was admissible under the rule of completeness.

a material issue, the opposing party is generally permitted to "explain, clarify, or contradict the evidence." *State v. Berg*, 147 Wn. App. 923, 939, 198 P.3d 529 (2008), *abrogated on other grounds by State v. Mutch*, 171 Wn.2d 464, 254 P.3d 803 (2011); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 66-67 (5th ed. 2007). The doctrine promotes fairness and truth-seeking:

> "It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it. Rules of evidence are designed to aid in establishing the truth. To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths."

*Ang*, 118 Wn. App. at 562 (quoting *Gefeller*, 76 Wn.2d at 455).

Opening the door to otherwise inadmissible evidence is another way of saying that the scope of relevant evidence has been expanded. ER 401. It is done in the interest of fairness.

Here, one of the State's law enforcement witnesses testified that Bailey told him that he owned the motorcycles found in one of the outbuildings. Bailey sought to inquire on cross-examination about an additional statement that he made to the officer during the same conversation that he had purchased one of the motorcycles. The statement Bailey sought to admit is hearsay. He wanted to offer his out-of-court statement for the truth of the matter contained therein. ER 801. Hearsay is inadmissible absent an exception. ER 802. Self-serving out-of-court statements of a defendant are not admissible under the admission of a party-opponent exception to the hearsay rule, when offered on his own behalf. *State v. Bennett*, 20 Wn. App. 783, 787, 582 P.2d 569 (1978).

Bailey's acquisition of the motorcycle is extremely relevant to the case. There is no question that the trial court allowed Bailey to present evidence that he purchased the motorcycle.

The admissibility of this evidence does not depend on the State opening the door to this subject. Rather, evidence that Bailey purchased the motorcycle is admissible in its own right. The question presented here is whether the evidence is admissible in the manner Bailey sought to introduce it, *i.e.*, whether the State's introduction of Bailey's admission that he owned the motorcycle opened the door to Bailey's *hearsay* statement that he purchased the motorcycles. We conclude that it did not.

The proffered evidence does not fit within the open-door rule. First, the State introduced Bailey's statement admitting ownership of the motorcycle to prove possession. Bailey's proffered statement that he purchased the motorcycle does not "explain, clarify, or contradict" that evidence. *See Berg*, 147 Wn. App. at 939. Evidence that Bailey purchased the motorcycle is more detailed information about his ownership, but it is cumulative on the issue of possession.

Second, admitting the hearsay evidence is inconsistent with the open-door rule's purpose of promoting fairness and truth seeking. Presumably, Bailey sought to admit his statement that he purchased the motorcycle in order to argue that he did not know the motorcycle was stolen. But, because the State cannot compel Bailey's testimony, admitting Bailey's statement that he purchased the motorcycle would actually create the very problem that the "open-door" rule was meant to avoid.

Admitting the statement would allow Bailey to point to his statement as evidence that he did not know the motorcycle was stolen while also barring the State from inquiring about any of the details of the alleged transaction, *e.g.*, from whom he purchased it, the circumstances of the purchase, the purchase date, and the purchase price as compared to the market value. The trial court expressed its concerns with this very problem. The trial court explained that admitting Bailey's statement to law enforcement about purchasing the motorcycle was problematic because

it would place Bailey's version of the facts before the jury while depriving the State of the benefit of testing the credibility of the statements through cross-examination, and it would deny the jury an objective basis for weighing the probative value of the evidence.

Finally, it is important to note that the trial court did not bar all evidence of Bailey having purchased the motorcycle. Bailey could have submitted other evidence of the transaction or he could have decided to testify on his own behalf. Under these circumstances, the trial court did not abuse its considerable discretion in applying the open-door rule and excluding the evidence.

II.    REASONABLE DOUBT INSTRUCTION

Bailey argues that the trial court's reasonable doubt instruction undercut the State's burden of proof by erroneously inviting the jury to search for the truth. He further argues that the trial court erred by refusing to define "abiding belief" in its jury instructions. We disagree.

"Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). "It is reversible error to instruct the jury in a manner that would relieve the State of this burden." *Pirtle*, 127 Wn.2d at 656. "We review a challenged jury instruction de novo, evaluating it in the context of the instructions as a whole." *Pirtle*, 127 Wn.2d at 656.

The instruction that Bailey complains of has never been held to be improper. To the contrary, our Supreme Court has directed the use of WPIC 4.01 to instruct juries of the nature of the government's burden. *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). The trial court did exactly that, reproducing WPIC 4.01 verbatim. *See* 11 WPIC 4.01.

Bailey argues that WPIC 4.01 improperly suggests that the jury's role is to search for the truth. But WPIC 4.01 does not tell the jury to find the truth—it tells the jury to acquit the defendant

*unless* the government convinces the jury of the truth of the charge. WPIC 4.01 does not misstate the State's burden, and therefore, we hold that the trial court did not err by giving the WPIC 4.01 instruction.

Bailey also argues that the trial court erred by declining to define "abiding belief" based on its erroneous understanding that it lacked authority to do so.[5] It is within the trial court's discretion to determine whether words used in an instruction require definition. *State v. Castro*, 32 Wn. App. 559, 565, 648 P.2d 485 (1982). Although the trial court did have authority to define abiding belief, it is clear that the court did not want to define the term without clear guidance from the appellate courts or the WPIC committee. The reasonable doubt instruction the trial court used has been approved by our Supreme Court and upheld without the inclusion of additional instructions defining "abiding belief." *See Bennett*, 161 Wn.2d at 318. Therefore, we hold that

---

[5] The trial court oral ruling is as follows:

> Definitions are also contained within the Washington Pattern Instructions. And at this point in time, there is no instruction for abiding belief. Counsel has proposed instructions that would help define abiding belief. I don't have any authority under statute and/or case law where that issue has been tackled by the Court of Appeals or any trial court that I'm aware of where we've gotten some feedback other than to say that the use of that phrase has been upheld by our [U.S.] Supreme Court.
>
> But there's no definition in the WPICs that the committee who puts these instructions together meets on a regular basis, and as of this date, I'm not aware of any attempt to define "abiding belief." So I don't believe I have the authority to contain a definition of "abiding belief." I don't have any authority from any legislative or judicial decision. And I completely understand counsel's attempt to better define it, but I don't believe I have legal authority to attempt to do that.
>
> And it may be that our—the committee for these instructions will at some point allow a definition of "abiding belief" and/or our Supreme Court or Court of Appeals will help us define it, but I'm not going to make new case law when I don't have any authority to do so. So I will respectfully decline to include the additional definitions as requested by counsel in Instructions 1 through 4.

RP at 226-27.

the trial court did not err by instructing the jury on reasonable doubt without defining "abiding belief."

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, C.J.

Bjorgen, J.